No. 23,955.

L. J. Adkinson, *Plaintiff*, v. A. E. Noonan, *Defendant*.

SYLLABUS BY THE COURT.

Office and Officeholders — *Constitutional Term* — *County Treasurer, Disqualified to Hold After Expiration of His Second Two-year Term.* The defendant's second two-year term as county treasurer expired on October 10, 1921. The person who had been elected to succeed him died in September, 1921. The constitution provides that county officers shall hold their offices for the term of two years and until their successors shall be qualified. The constitution further provides that no person shall hold the office of sheriff or county treasurer for more than two consecutive terms. *Held*, the defendant was disqualified from holding over during that which would have been the term of the treasurer-elect, had he lived; the office became vacant on October 10, 1921; and the county commissioners were authorized to fill the vacancy by appointment of the plaintiff.

Original proceeding in quo warranto. Opinion filed January 7, 1922. Judgment for plaintiff.

*F. Dumont Smith*, and *Eustace Smith*, both of Hutchinson, for the plaintiff. *William H. Burnett*, of Hutchinson, for the defendant.

The opinion of the court was delivered by

Burch, J.: The action is one to determine who is entitled to the office of treasurer of Reno county. The cause is submitted on an agreed statement of facts, which follows:

"I. That the defendant has served as county treasurer of Reno county, Kansas, for two consecutive terms, the second term of which was to have regularly expired on the 10th day of October, 1921.

"II. That L. H. Obee was duly elected county treasurer of Reno county, Kansas, at the November election of 1920; that the said L. H. Obee, had he lived, would have taken office to succeed said defendant on the 10th day of October, 1921; and that the said L. H. Obee died on the 5th day of September, 1921.

"III. After the death of L. H. Obee and before the 10th day of October, 1921, the board of county commissioners of Reno county, Kansas, asked for an opinion from the attorney-general of the state of Kansas, and from the county attorney of Reno county, Kansas, concerning whether or not said office would be vacant on October 10, 1921, by reason of the death of L. H. Obee on September 5, 1921, and that said board were advised by the attorney-general and the county attorney that the defendant would hold over and that there was no vacancy.

"IV. That by reason of the death of the said L. H. Obee, the board of county commissioners declared a vacancy on the 15th day of October, 1921, and appointed plaintiff to fill said vacancy.

"V. That immediately after plaintiff was appointed, he demanded from

the defendant possession of said office, and that plaintiff is duly qualified to hold said office if the defendant is disqualified."

The decision depends on the interpretation given to a provision of the constitution. Article 9 of the constitution, as first adopted, related to county and township organization, and section 3 read as follows:

"All county officers shall hold their offices for the term of two years, and until their successors shall be qualified; but no person shall hold the office of sheriff or county treasurer for more than two consecutive terms." (Gen. Stat. 1915, p. 55.)

In 1876, the section was amended in such a way that neither phraseology nor punctuation of the matter contained in the original section was changed. In 1904 the section was superseded by a constitutional amendment which now appears in the article relating to elections, and which reads as follows:

"General elections and township elections shall be held biennially on the Tuesday succeeding the first Monday in November, in the years bearing even numbers. All county and township officers shall hold their offices for a term of two years and until their successors are qualified: *Provided,* One county commissioner shall be elected from each of three districts, numbered 1, 2, and 3, by the voters of the district, and the legislature shall fix the time of election and the term of office of such commissioners; such election to be at a general election, and no term of office to exceed six years. All officers whose successors would, under the law as it existed at the time of their election, be elected in an odd-numbered year, shall hold office for an additional year and until their successors are qualified. No person shall hold the office of sheriff or county treasurer for more than two consecutive terms." (Gen. Stat. 1915, § 191.)

This amendment is still in force, and the pertinent portions may be segregated as follows:

"All county . . . officers shall hold their offices for a term of two years and until their successors are qualified; . . . No person shall hold the office of sheriff or county treasurer for more than two consecutive terms."

The comma which formerly followed the word "years" in the sentence specifying length of term is missing. The purpose of the amendment was to discontinue annual elections and provide for biennial elections, and the court is satisfied that if a change in meaning of the old provision had been intended, better means of indicating the change would have been employed. The word "but," which formerly introduced the sentence limiting eligibility to hold the offices of sheriff and county treasurer, is missing, because the

arrangement of sentences in the amendment made the word unnecessary. The potency of the inhibition against holding more than two consecutive terms was not affected. The result is, the provisions under consideration have the same meaning as original section 3 of article 9.

The constitution deals with three subjects affecting the public welfare. Good government is promoted by making tenure of public office secure, and the best means of providing such security is by making term of office definite. Length of term is a matter of policy depending on a variety of considerations, and in this instance was fixed at two years. Definite terms must of necessity come to an end, and successors to officers whose terms expire may omit to qualify, or may be prevented from qualifying, for many reasons. The public business must be transacted without interruption, and consequently provision should be made for conduct of affairs between expiration of term and qualification of the successor in office. In making provision for possible intermission, the fundamental thing is not term of office, but protection from embarrassment resulting from suspension of official activity. The question is, who shall discharge the duties of the office until the qualified successor takes charge, and the constitution answered the question by designating the incumbent whose stated term had just closed. To use the popular expression, he holds over. The offices of sheriff and county treasurer bear such peculiar relation to the public welfare that persons ought not to be allowed to hold them indefinitely. There ought to be a time beyond which surrender and accounting may not be postponed, and the constitution limited tenure of those offices to two consecutive terms.

If the method which has been employed in approaching the problem for solution be sound, we are not so much concerned about definition of the word "term," as about carrying out a public policy established by the constitution. The provision for holding over relates to occasional and exceptional situations. Normally, public officers will qualify, and take up the duties of their offices. Generally it is not of vital importance whether they do so or not, since all county officers except sheriff and county treasurer are eligible to third and other consecutive terms. The sheriff and the county treasurer, however, are placed in a class by themselves. Holding for more than two consecutive terms portends danger, and the danger cannot be averted by calling a term of holding over part of the sec-

ond term. If a term of holding over could be counted as part of the second term, it would be easy to evade the constitution. A sheriff or a county treasurer, with sufficient popularity or political cunning to be elected, could make himself eligible for a third consecutive term by omitting to qualify for his second term. He might be able to manipulate the election of a successor who would refuse to qualify, or he might induce his successor to renounce the office before qualifying.

Under the constitutional amendment which has been quoted, the next election to fill the office in controversy will be held on the Tuesday next succeeding the first Monday of November, 1922. The statute which relates to the office of county treasurer provides that the term of office shall begin on the second Tuesday of October after election, in this instance October, 1923. (Gen. Stat. 1915, § 2759.) If the defendant is to hold over at all, he will hold for the two-year term for which Obee was elected. The plain fact is, he will hold for three consecutive terms, two terms of his own and Obee's term, and the question is, whether the provision of the constitution concerning holding over shall be allowed to work a nullification of the provision against holding more than two consecutive terms.

The purpose of the holding-over provision was to prevent temporary inconvenience. The purpose of the provision prohibiting intrenchment in office was to fend against graver menace. There is good ground for deciding that the words, "and until their successors are qualified," do not apply to the offices of sheriff and county treasurer at all. However that may be, no amount of sophistication can make the words include a full regular term of two years, definitely delimited at the time the holding over, if permitted, would begin. The result is, the defendant was disqualified from entering upon that which would have been Obee's term had he lived. The office became vacant the day the period commenced which would have formed Obee's term, had he lived, and the county commissioners were authorized to fill the vacancy. (Gen. Stat. 1915, § 2762.)

The conclusion reached is not in harmony with the decision in the case of *Pruitt v. Squires,* 64 Kan. 855, 68 Pac. 643. All that can be said for that decision appears in the majority opinion. The court as now constituted unanimously approves the reasoning of the dissenting opinion, filed by then Justice, now Chief Justice Johnston, and the decision in the case of *Pruitt v. Squires* is overruled.

Judgment is entered for the plaintiff.